# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

**1. A black and blue, iPhone 5, Model #A1532, bearing
IMEI# 013892000265327**, and other property further
described in "Attachment A1", which is attached hereto and
fully incorporated herein.

**2. A blue and white, 16 GB Lexar Micro SD electronic
storage device**, and other property further described in
"Attachment A2",  which is attached hereto and fully
incorporated herein.

Case Number:

**2:14 - SW - 0 6 6 1 ⎯ KJN**

# FILED

NOV 2 1 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

I, ____Jason Bauwens____ , being duly sworn depose and say:

I am a (n) ____U. S. Postal Inspector____ and have reason to believe that:
☐ on the person of or ☒ on the property or premises know as (name, description and/or location)

**See Attachments A1 & A2, attached hereto and incorporated herein**

in the _____EASTERN_____ District of _____CALIFORNIA_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachments B1 and B2, attached and incorporated herein**

which is (state one or more bases for search set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

**evidence of, fruits of, instrumentalities, and property designed for use, intended for use
and used in committing crimes**

concerning a violation of Title ___18___ United States code, Section (s) 1028A, 1029, 1341, 1344, and 1349.

The facts to support a finding of probable cause are as follows: **See Attached Affidavit**
Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

_____
Jason Bauwens, U.S. Postal Inspector

Sworn to before me and subscribed in my presence,

____Nov. 21, 2014____   3:30pm      at ____Sacramento, California____
Date                                         City and State

HONORABLE KENDALL J. NEWMAN
United States Magistrate Judge
Name and Title of Judge

_____
Signature of Judge

## ATTACHMENT A1

A black and blue iPhone 5, cellular telephone, bearing exterior Model #A1532, bearing exterior IMEI# 013892000265327, and including an AT&T SIM card found inside of the phone. At the time the phone was seized, it was assigned Mobile Cellular Phone Number 209-688-3134, which was provided service by AT&T Wireless.

The cellular telephone is currently in the possession of the U.S. Postal Inspection Service office, located at 3131 Arch Airport Road, Stockton, California, in the Eastern District of California.

ATTACHMENT B1

The following evidence to be searched for constitute evidence, fruits, contraband, and instrumentalities of violations of: (i) Title 18, United States Code, Section 1028A (Aggravated Identity Theft); (ii) Title 18, United States Code, Section 1029 (Access Device Fraud); (iii) Title 18, United States Code, Section 1341 (Mail Fraud); (iv) Title 18, United States Code, Section 1344 (Bank Fraud); and (v) Title 18, United States Code, Section 1349 (Conspiracy) (collectively, the "Specified Federal Offenses"):

1.    Communications, records, or data including but not limited to emails, text messages, photographs, audio files, video files, or location data:

      a.  tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

      b.  tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

      c.  tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

      d.  tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

      e.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

      f.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

      g.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

      h.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

i.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

j.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

k.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

l.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

m.  tending to identify travel to or presence at locations involved in efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

n.  tending to identify travel to or presence at locations involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

o.  tending to identify travel to or presence at locations involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

p.  tending to identify travel to or presence at locations involved in efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

q.  tending to identify the user of, or persons with control over or access to, the subject phone as described in Attachment A1; or

r.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data described above.

## ATTACHMENT A2

A blue and white, 16 GB Lexar Micro SD electronic storage device, commonly referred to as a thumb drive. The thumb drive has a small metal key ring attached to it at the non-port end of the device.

The thumb drive is currently in the possession of the U.S. Postal Inspection Service office, located at 3131 Arch Airport Road, Stockton, California, in the Eastern District of California.

ATTACHMENT B2

The following evidence to be searched for constitute evidence, fruits, contraband, and instrumentalities of violations of: (i) Title 18 United States Code, Section 1028A (Aggravated Identity Theft); (ii) Title 18 United States Code, Section 1029 (Access Device Fraud); (iii) Title 18 United States Code, Section 1341 (Mail Fraud); (iv) Title 18 United States Code, Section 1344 (Bank Fraud); and (v) Title 18 United States Code, Section 1349 (Conspiracy) (collectively, the "Specified Federal Offenses"):

1.     Documents, records, data, and information, including but not limited to financial records, receipts, statements of accounts, credit card applications, documents and effects bearing a form of identification such as a person's name, birthdate, address, Social Security number, driver's license number, or other personal identification information:

  a.  tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

  b.  tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

  c.  tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

  d.  tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

  e.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

  f.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

  g.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

h.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

i.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

j.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

k.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

l.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

m.  tending to identify the user of, or persons with control over or access to, the thumb drive as described in Attachment A2; or

n.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of the documents, records, data, and information described above.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jason Bauwens, a U.S. Postal Inspector with the United States Postal Inspection
Service, being duly sworn, depose and state the following:

### I.

### EXPERIENCE AND TRAINING

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of
Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal
laws and duly authorized to request a search warrant. I have been a federal law enforcement
officer for approximately twelve years. I am currently assigned to the United States Postal
Inspection Service Office in Stockton, California, with the primary responsibility of conducting
criminal investigations involving mail and identity theft. My current official duties also include
investigation of other federal and state law violations, including, among others: (i) delivery of
illegal drugs through the U.S. Mail; (ii) robbery and burglary of postal facilities; (iii) destruction
of government property; (iv) theft of U.S. Mail; (v) possession of stolen U.S. Mail; (vi) mail,
bank, and wire fraud; (vii) production and use of counterfeit checks and identification documents;
and (viii) assaults on federal employees.

2.      During my law enforcement career, I have successfully graduated from multiple
federal law enforcement training academies, including a ten-week course, in 1998, at the National
Park Service Law Enforcement Academy in Sylva, North Carolina, and a sixteen-week course, in
2003, at the National Park Ranger Integrated Police Training Program at the Federal Law
Enforcement Training Center in Glynco, Georgia. Most recently, I completed a twelve-week
training course at the Criminal Investigator Training Program at the Federal Law Enforcement
Training Center in Glynco, Georgia. During those training programs and others, I studied various
aspects of the investigation and enforcement of federal criminal laws. Throughout my law
enforcement career, I have investigated approximately one thousand criminal violations involving
federal, state, and tribal laws.

3.      During my law enforcement career, I have testified on multiple occasions before
grand juries and during various court proceedings. I have participated in multiple Title III wire
intercept investigations and I have executed many search and arrest warrants.

4.      The facts and conclusions in this Affidavit are based on: (i) my personal
knowledge gathered during my participation in this investigation; (ii) my training and experience;

· (iii) the training and experience of other law enforcement personnel with whom I have discussed this investigation, (iv) my review of information obtained by other law enforcement personnel participating in this investigation, including reports and databases prepared and maintained by other fraud investigators and state and federal agents; and (v) statements of witnesses and victims. Since this Affidavit is being submitted for the limited purpose of establishing probable cause to secure search warrants for the described locations, I have not set forth each and every detail I have learned during the course of this investigation. Nor do I request that this Court rely upon any facts not set forth herein in reviewing this Affidavit and considering the associated applications for search warrants.

## II.

## CRIMINAL VIOLATIONS

5.      This Affidavit is submitted in support of applications for search warrants for the two items described more particularly in "Attachment A1" and "Attachment A2", which are attached to the application and fully incorporated herein.  The warrants are for the items set forth in "Attachment B1" and "Attachment B2," which are attached to the application and fully incorporated herein.  The items set forth in Attachments B1 and B2 may constitute evidence, fruits, contraband, and instrumentalities of violations of: (i) Title 18, United States Code, Section 1028A (Aggravated Identity Theft); (ii) Title 18, United States Code, Section 1029 (Access Device Fraud); (iii) Title 18, United States Code, Section 1341 (Mail Fraud); (iv) Title 18, United States Code, Section 1344 (Bank Fraud); and (v) Title 18, United States Code, Section 1349 (Conspiracy) (collectively, the "Specified Federal Offenses").

## III.

## LOCATIONS TO BE SEARCHED

6.      This Affidavit is submitted in support of applications for search warrants for the items described as:

(i) **A black and blue, iPhone 5, Model #A1532, bearing IMEI# 013892000265327** (hereinafter, the "**IPHONE**"); and

(ii) **A blue and white, 16 GB Lexar Micro SD electronic storage device** (hereinafter, the "**THUMB DRIVE**"); both of which are more particularly described, respectively, in Attachment A1 and Attachment A2.  The **IPHONE** and **THUMB DRIVE** are currently in the possession of the U.S. Postal Inspection Service, in an evidence storage facility located in Stockton, California,

within the Eastern District of California.

7.      Based on the facts set forth in this Affidavit, I believe that probable cause exists to conclude that evidence, fruits, contraband, and instrumentalities, and other items set forth more particularly, respectively, in Attachments B1 and B2 will be found within the **IPHONE** and **THUMB DRIVE**, which are further described in Attachments A1 and A2, and that such evidence, fruits, contraband, and instrumentalities will tend to establish violations of the Specified Federal Offenses.

**IV.**

**FACTS ESTABLISHING PROBABLE CAUSE**

**A.      Background**

8.      Beginning in or about December 2013, Target retail stores began seeing a pattern of fraudulent online credit card applications and fraudulent purchases within various Target stores in and around Stockton, California, and elsewhere in the Eastern District of California. The fraudulent credit card purchases appeared to affect a specific batch of uniquely assigned account numbers issued to existing Target "RedCard" access device holders. Target RedCards are access devices, commonly known as credit cards, issued by TD Bank USA, a federally insured financial institution, and can only be used at Target retail stores and online at a Target.com website.

9.      Target fraud investigators opened an investigation and discovered that the persons committing the fraud were altering the information stored on the magnetic stripes found on the backs of non-Target credit cards to link the non-Target credit cards to existing and legitimate Target credit card accounts with valid account numbers held by victim account holders. Investigators concluded that the persons committing the fraud were using an electronic credit card number generating program that predicted valid Target credit card account numbers after scanning one or two legitimate Target account numbers. After generating those predicted Target account numbers, the persons committing the fraud used the same device to replace existing information on non-Target credit cards with valid Target credit card account information, which resulted in credit cards that, when scanned at Target or used at Target.com, were recognized by Target point-of-sale software as valid Target credit card accounts. Target investigators believed the increase in fraudulent credit card applications were being submitted by the same persons who were manufacturing the counterfeit credit cards. Target investigators began contacting the true Target credit card account holders affected by the fraudulent transactions, confirming that they

were not the persons making the fraudulent purchases and that no other persons were authorized to use their account numbers.

**B.     Khoonsrivong Admitted Making and Distributing Fraudulent Target Credit Cards**

10.     On or about January 23, 2014, a fraudulent online credit card application was submitted in the name of a victim with the initials "J.G." (the "J.G. Application"). The fraudulent J.G. Application included J.G.'s true name, date of birth, social security number, and other personal identification information. As a result of the submission of the fraudulent J.G. Application, a Target credit card account ending in x3024 was issued. After the submission of the fraudulent J.G. Application, a person claiming to be J.G. called Target concerning the account. The phone number captured by Target at the time of the incoming call was 209-337-5098. A query of that phone number through the CLEAR law enforcement database, used by law enforcement to check names, addresses, and phone numbers, revealed that the phone number was assigned to "Bo Khoonsrivong."

11.     On or about February 2, 2014, two fraudulent Target.com orders were placed online against the Target RedCard account ending in x1186 ("Victim Account x1186"). Neither transaction was authorized by the victim account holder. On or about February 3, 2014, a third fraudulent purchase was made online at Target.com against Victim Account x1186, in the amount of $112.44. The fraudulent purchases caused the items to be mailed by private mail carrier from distribution centers associated with Target to 3830 Alvarado Avenue, Apartment 48, in Stockton, California (95204). The billing phone number used during all three fraudulent purchases using Victim Account x1186 was 209-688-3134. A query of that phone number through the CLEAR law enforcement database revealed that the phone number was assigned to "Bo Khoonsrivong." A query of the address: 3830 Alvarado Avenue, Apartment 48, in Stockton California (95204) through the CLEAR law enforcement database revealed that the address was used by "Boone B. Khoonsrivong."

12.     On or about April 1, 2014, Target asset protection officers at a Target store located at 4707 Pacific Avenue, in Stockton, California, identified and detained a woman named Rosalynne Ramirez ("Ramirez"), after Ramirez made a purchase using a fraudulently manufactured Target credit card assigned an account number that was included in the range of compromised account numbers developed by Target investigators. During an interview with Target investigators, Ramirez stated, in substance and in part, that a man named Boone

Khoonsrivong ("Khoonsrivong") gave Ramirez the fraudulent credit card and a shopping list, and asked Ramirez to buy the items on the list. Ramirez also stated that Khoonsrivong told Ramirez that she could use the card to purchase any personal items she needed for herself. Additionally, Ramirez stated that Khoonsrivong instructed Ramirez to purchase prepaid Visa gift cards and, after making the purchases, to meet him at a nearby Wal-Mart, where he would take the prepaid Visa gift cards and use them to purchase different prepaid gift cards from Wal-Mart. During their interview of Ramirez, investigators showed her a live video feed that depicted a male who was then shopping at a Target Store located at 10424 Trinity Parkway, in Stockton, California, and Ramirez identified the man as Khoonsrivong.

13.     On or about the same day, Target investigators observed Khoonsrivong make two purchases using a fraudulently manufactured credit card at a Target Store located at 10424 Trinity Parkway, in Stockton, California. Target asset protection officers detained Khoonsrivong after he made the purchases but before he could leave the store. During an interview with Target Investigators, Khoonsrivong told Target investigators, in substance and in part, that he held a degree in Computer Science and that he had figured out Target's credit card sequencing system, and possessed a credit card number generating program that allowed him to create counterfeit credit cards. Khoonsrivong also stated that he was the only one that knew how to manufacture the counterfeit cards so he began to recruit other people to use the cards and increase the scope of his operation. Khoonsrivong stated that he had recently improved his skill at stealing identities.

14.     When Khoonsrivong was detained at Target, he possessed the counterfeit Target credit card he used to make the fraudulent purchases that day. Over the front of the counterfeit card was a clear laminate overlay on which was printed with the name "Boone Khoonsrivong" and a Target credit card number ending x6633. The data contained on the magnetic stripe on the back of the card revealed the credit card number to be associated with a legitimate Target credit card account number ending in x8282, which did not match the number printed on the front of the card and which was not assigned to Khoonsrivong. Also, on Khoonsrivong's person when he was detained was a leather wallet containing numerous credit cards in the names of other persons, along with the **IPHONE** and **THUMB DRIVE**. The phone number for the **IPHONE** was confirmed by Khoonsrivong to be 209-688-3134, the same number used to call-in the previously mentioned fraudulent transactions and applications.

15.     Officers of the Stockton Police Department responded to the Target store and arrested Khoonsrivong in connection with the fraudulent purchases. When the officers departed the Target store, they inadvertently left behind Khoonsrivong's personal items, including the **IPHONE** and **THUMB DRIVE**, which were booked into an evidence storage locker by Target asset protection representatives. On May 19, 2014, officers of the Stockton Police Department returned to the Target store to take custody of the **IPHONE, THUMB DRIVE**, and other personal items that had been stored in the Target evidence locker since April 1, 2014. Thereafter, officers of the Stockton Police Department booked the items into the Stockton Police Department evidence storage. On or about October 28, 2014, your Affiant took possession of the **IPHONE, THUMB DRIVE**, and other personal items, which are currently being held at the U.S. Postal Inspection Service office, located at 3131 Arch Airport Road, Stockton, California, in the Eastern District of California.

16.     On or about August 21, 2014, law enforcement agents reviewed Target surveillance video associated with fraudulent credit card purchases in several Target stores in the Eastern District of California between March 2014 and April 1, 2014, the day Khoonsrivong was detained by Target investigators, and identified Khoonsrivong as the person who conducted over ten such fraudulent transactions using counterfeit Target credit cards.

17.     In or about May 2014, approximately one month after Ramirez and Khoonsrivong were identified by Target investigators, the fraudulent purchases using counterfeit Target credit cards began increasing significantly. The card numbers being used were in the same batch of numbers previously identified by Target investigators and used by Khoonsrivong and Ramirez. Between May 2014 and July 2014, hundreds of fraudulent purchases were made using counterfeit credit cards belonging to true Target account holders.

18.     On or about July 14, 2014, fraudulent online credit card applications were submitted in the names of victims with the initials B.C. and T.L (the "B.C. Application" and the "T.L. Application"). The fraudulent B.C. Application and the fraudulent T.L. Application contained, respectively, the true names, dates of birth, social security numbers and other personal identification information of B.C. and T.L. As a result of the submissions of the fraudulent B.C. Application and the fraudulent T.L. Application, Target credit card accounts ending in x4831 and x4747 were issued, respectively, in the names of victims B.C. and T.L. After the submissions of the fraudulent B.C. Application and the fraudulent T.L. Application, a person claiming to be each

of the victims called Target concerning the fraudulent accounts. The phone number captured by Target at the time of the incoming call was 209-688-3134.

19.     On or about August 28, 2014, law enforcement executed a federal search warrant at Khoonsrivong's residence. At the residence, specifically within Khoonsrivong's bedroom, law enforcement agents located more than 100 access devices, more than fifty counterfeit credit cards, stolen mail, numerous cell phones, tablets, computers, and printers, which were being used to commit identity theft and various types of fraud. Attached to the laptop computer on the desk within Khoonsrivong's bedroom, law enforcement agents seized a credit card reader/writer that is used to alter the information contained within the data stripe on the back of a credit card. The credit card reader/writer works in conjunction with a program that would be installed on a computer. Law enforcement agents observed various types of access devices that were in differing stages of being altered and/or manufactured to look like legitimate Target credit cards. During the search warrant, Khoonsrivong stated to law enforcement agents that his phone number was 209-688-3134.

20.     Following execution of the search warrant, law enforcement agents conducted a preliminary search of some of the cell phones, tablets, computers, and electronic storage devices seized from Khoonsrivong's residence, and located evidence of access device fraud, bank and wire fraud, and identity theft crimes. Law enforcement agents also located numerous text messages ("SMS"), multimedia messages ("MMS"), emails, photographs, and personally identifying information ("PII") of victims, regarding credit card fraud and identity theft crimes, often being shared between the suspects in this investigation.

## V.

## MANNER AND MEANS

21.     Based on my participation in this investigation, I am aware that as a result of the counterfeit Target credit cards that are being generated and used by Khoonsrivong and his associates, TD Bank USA, through Target retail stores, has suffered more than $200,000 in actual losses since December 2013. I am also aware that as a result of the counterfeit Target credit cards being generated and used by Khoonsrivong and his associates, hundreds of Target credit card accounts, which are uniquely assigned to customers, have been compromised, causing those customers to be victimized.

22.     Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that individuals, like Khoonsrivong and his co-conspirators, involved in identity theft, mail, bank, and access device fraud schemes (including schemes to acquire and to use federally insured bank credit cards assigned to others) often obtain and profile the contents of stolen U.S. Mail to further their schemes. Such individuals often possess stolen U.S. Mail for long periods of time for use in their schemes, and will frequently create electronic records of accumulated victim PII from stolen mail. Such individuals often work with others to use stolen items (including financial information and personal identification information), often maintain close contact, and travel together. I am also aware that in financial fraud and identity theft schemes, perpetrators often use victim names, pose as victims on-line to make internet transactions and to open accounts, and to cause fraudulently purchased items to be mailed in victim names. Perpetrators will do this to avoid detection and to create layers of anonymity. Also to avoid detection, perpetrators will cause fraudulently purchased items to be mailed and stored at different locations. I am aware that perpetrators will keep tools, implements, financial statements, access devices, and stolen items close to themselves (especially in vehicles they use, on their person, in their residences, and in storage units) or in areas in which they have access to ensure custody and control of the items and for easy access for use or disposal.

23.     Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that individuals involved in identity theft, mail, bank, and access device fraud schemes (including schemes to acquire and to use federally insured bank credit cards assigned to others) often steal and possess stolen U.S. Mail to further their schemes. Such individuals often possess USPS Arrow Locks, mail receptacle parts, postal property, P.O. Box keys and locks, counterfeit keys, files, burglary tools and pry bars, and grinders used to make keys to open mail receptacles without authority. I am also aware that individuals involved in identity theft crimes, including using access devices in the names of others, possess identification and access device making/altering materials, including but not limited to, identification templates, credit card templates and software, and magnetic stripe readers/writers.

24.     Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that persons engaged in fraud often retain records of their transactions in their personal residences, business premises, rented storage units,

vehicles, electronic storage and other devices, or other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, and other written and digital formats. Records of this kind are frequently stored in electronic computer media.

25.     Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that persons engaged in fraud often maintain records of their financial activities in both their businesses premises and their residences, including receipts for expenditures by cash and check, bank records, and other financial documents. Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that there are many reasons why criminal offenders might maintain evidence for long periods of time. First, to outsiders the evidence may seem innocuous (e.g. financial, credit card and banking documents, travel documents, receipts, client lists, documents reflecting purchase of assets, personal calendars, telephone and address directories, checkbooks, photographs, utility records, ownership records, letters and notes, tax returns and financial records, escrow files, telephone and pager bills, keys to safe deposit boxes, packaging materials, computer hardware and software). However, to law enforcement agents, such items may have significance and relevance when considered in light of other evidence. Second, the individual may no longer realize that he/she still possesses the evidence or may believe law enforcement agents could not obtain a search warrant to seize the evidence. This is especially true with electronic storage devices that are capable of storing vast collections of data for indefinite periods of time. Third, the individual may operate under the belief that he/she has deleted, hidden, or destroyed computer-related evidence, when, in fact, that evidence may be retrievable by a trained forensic computer expert.

26.     Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that persons engaged in fraud often maintain records of their financial activities for long periods of time, particularly when they are engaged in ongoing, long-term criminal conduct. This is especially true with electronic storage devices that are capable of storing vast collections of data for indefinite periods of time. Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, and my review of *United States v. Greany*, 929 F2d 523 (9th Cir. 1991), I am aware that the Ninth Circuit and other courts have held that, where there is ongoing criminal

business or where the evidence is of a nature that would be kept long after the criminal business has ceased, the passage of long periods of time will not make the evidence supporting the issuance of a search warrant stale.

## VI.

## ELECTRONIC DEVICES

27.     Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that, individuals involved in identity theft, mail, bank, and access device fraud schemes (including schemes to acquire and to use federally insured bank credit cards assigned to others), along with their conspirators and accomplices, often use mobile cell phones, laptop computers, electronic tablets and other electronic devices to communicate with one another regarding their fraud and theft activities, by voice calls, text messages, and electronic mail.  I know that such persons who use such devices commonly exchange real time information about theft and fraud activity and other information regarding execution of theft or fraudulent transactions.  Such information can be found stored in the text, voice, and email messages of such devices or other electronic data storage within such devices. Such persons also use electronic devices to link with the internet to obtain addresses, maps, and other data about the scheme in which they are engaged and their victims.  Such electronic devices can also be used to remotely make on-line fraudulent applications and or purchases.  Such devices can also be used to perform false or fraudulent mobile banking operations, transactions, and checks.

28.     Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am aware that the complete contents of text messages and emails may be important to establishing the actual user who has dominion and control of a particular phone or computer at a given time.  Cell phones may be subscribed to under false names with little to no verification by the service provider.  Cell phones and computers may also be used by multiple people.  Given the ease with which such items may be obtained and used, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of a particular cell phone or device that was used to send a particular text or email message, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular cell phone or device.  Often, by piecing together information contained in the contents of the device (cell phone or computer or storage device) an investigator can

establish the identity of the actual user. Often, those pieces will come from a time period before the device was used in criminal activity. Limiting the scope of the search for information showing the actual user of the device would, in some instances, prevent the government from identifying the user of the device and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the entire content of an electronic communication device often provides important evidence regarding the actual user's dominion and control of the device. Moreover, to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), the government must be allowed to seize and review the contents of communications of electronic storage devices, including text and email messages sent or received by the subject device to determine whether other individuals had access to the device. If the government were constrained to review only a small portion of communications on the device, that small subsection might give a misleading impression that only a single user had access to the devices.

29.     Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case, and my investigation in this case, I am aware that criminals discussing their criminal activity via electronic communication devices (computer email and cell phone text messaging) may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of text message conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. It is even possible to use pictures, images, and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a text message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters. "Keyword searches" or other automated methods of review of the text messages sent to and from the subject device would not account for any of these possibilities, so actual review of the text and email messages by law enforcement personnel with information regarding the identified criminal activity is necessary to find all relevant evidence.

30.     Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case and my investigation in this case, I have learned the following additional information:

(a)     Individuals who steal, misdirect, take, unlawfully possess, or by fraud or deception

obtain, U.S. Mail often maintain the U.S. Mail, and its contents to include financial records, for long periods of time to exceed months. Such individuals will also scan onto computers, cell phones, and computer storage devices stolen mail or fraudulently obtained mail (and its contents) and maintain on computers, cell phones, and storage devices co-conspirators names, victim's names, addresses (of victims, associates, accomplices), and stolen means of identification, thereby reducing such items' exposure to law enforcement and the community. Individuals will then frequently dispose of the mail to avoid detection or association with the stolen mail.

(b)     Individuals who steal, misdirect, take, unlawfully possess, or by fraud or deception obtain, identity information (including names, date of birth, account numbers, SSNs, and other financial information) will often maintain this information for long periods of time to exceed months. Such individuals will also scan such onto computers, cell phones, and computer storage devices and maintain such on computers, cell phones, and storage devices of co-conspirators, thereby reducing such items' exposure to law enforcement and the community.

(c)     Also, individuals involved in stealing or fraudulently obtaining U.S. Mail and possessing financial information of others for fraud or deception, use laptop computers to remain in contact (communicate) with others involved in the same type of criminal activity. These individuals often retain evidence of such activity on their computer(s) or other forms of electronic storage media (including cell phones) for long periods of time. Individuals who fraudulently use the U.S. Mail and or financial information of others also use computers to access the internet to assess value and or validity of items obtained fraudulently from the U.S. Mail and or financial information, to barter and sell such stolen property/information, to communicate with others to sell and trade the stolen property/information, and to solicit information regarding the stolen property/information.

(d)     I am aware that even if a perpetrator deletes evidence from electronic storage devices of criminal activity (such as identity theft, and fraudulent use of financial information in U.S. Mail), the evidence often can be recovered from computers or other forms of electronic storage media.

## VII.

## COMPUTER DATA

31.     I am aware that searching and seizure of electronic storage devices requires a
qualified computer forensic specialist and must be conducted in a laboratory or other controlled
environment. This is true based on the following:

(a)     The volume of evidence: Computer storage devices (like hard disks, diskettes,
tapes, laser disks, Jaz, Zip and other such storage devices/drives) can store the
equivalent of thousands of pages of information. Additionally, a suspect may try
to conceal criminal evidence; he or she might store it in random order with
deceptive (misleading) file names. This requires searching authorities to examine
all the stored data to determine which particular files is evidence or
instrumentalities of a crime. This sorting process can take weeks or months,
depending on the volume of data stored.

(b)     Technical requirements:  Searching computer systems for criminal evidence is a
highly technical process requiring expert skill and a properly controlled
environment.  The vast array of computer hardware and software available
requires even computer experts to specialize in some systems and applications, so
it is difficult to know before a search expert is qualified to analyze the system and
its data.  Also, data search protocols are exacting scientific procedures designed to
protect the integrity of the evidence and to recover even "hidden," erased,
compressed, password protected, or encrypted files.  Since computer evidence is
extremely vulnerable to inadvertent or intentional modification or destruction
(both from external sources or from destructive code imbedded in the system as a
"booby trap") a controlled environment is essential to its complete and accurate
analysis.

(c)     Data analysis may use several different techniques to search electronic data for
evidence or instrumentality's of a crime. These include, but are not limited to the
following: examining file directories and subdirectories for the lists of files they
contain, "opening" or reading the first few "pages" of a selected files to determine
their contents, scanning for deleted or hidden data, searching for key words or
phrases ("string searches").

---

Affidavit                                                                                          Page 13

32.     I am aware that searching and seizure of electronic storage devices requires a qualified computer forensic specialist and must be conducted in a laboratory or other controlled environment. Therefore, your affiant requests authority to make a return on any seized electronic storage devices 90 days after the items are seized. If additional time is needed, the government may seek an extension of this time period from the Court within the original 90 day period from the date of execution of the warrant.

33.     Based on my training and experience, and the training and experience of law enforcement personnel with whom I have discussed this matter, and based on common sense, I am aware that evidence, fruits, contraband, and instruments of individuals engaged in financial fraud, identity theft, and fraudulent use of stolen financial information (including from U.S. Mail), as described herein, are typically kept on their person or in their vehicles, in vehicles that they use, in their residences and surrounding garages, carports, storage units, and in their historical family residence that they continue to use and maintain. Based on my training and experience, and the training and experience of law enforcement personnel with whom I have discussed this matter, and based on common sense, I am also aware that evidence, fruits, contraband, and instruments of individuals engaged in financial fraud, identity theft, and fraudulent use of stolen financial information (including from U.S. Mail), as described herein, possess such items at places and residences where they stay with their friends or relatives.

34.     Based on my training and experience, and the training and experience of law enforcement personnel with whom I have discussed this matter, and based on common sense, I am aware that persons engaged in financial fraud, including access device and bank fraud, cause mail to be misdirected to addresses that they utilize. Such persons also use associate addresses online to receive merchandise, financial documents, access devices, and other items.

35.     Based on my training and experience, and the training and experience of law enforcement personnel with whom I have discussed this matter, and based on common sense, I am aware that persons engaged in financial crimes, including access device and bank fraud, sort and categorize the stolen data and items they obtained, including stolen U.S. Mail, and then dispose of the unwanted items by tossing or disregarding them in locations such as their trash. Such perpetrators commonly sort and create profiles with the contents of stolen U.S. Mail. Also, perpetrators keep contents of stolen U.S. Mail, including financial and identification information of victims in their residences and vehicles.

## VIII.

## CONCLUSION

36.    For the foregoing reasons, there is probable cause to believe that evidence, fruits, contraband, and instrumentalities, as more fully described in Attachments B1 and B2 to the Search Warrants and Applications for Search Warrants, of violations of the Specified Federal Offenses may be found within the **IPHONE** and **THUMB DRIVE**, as further described in Attachments A1 and A2.


Jason Bauwens
U.S. Postal Inspector
United States Postal Inspection Service


Subscribed and sworn to before me
This 21 day of November 2014.

HONORABLE KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE


Approved:

ANDRE M. ESPINOSA
ASSISTANT UNITED STATES ATTORNEY

AO 93 (Rev. 12/03)  Search Warrant

# UNITED STATES DISTRICT COURT

EASTERN _____ District of _____ CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**SEARCH WARRANT**

**1. A black and blue, iPhone 5, Model #A1532,
bearing IMEI# 013892000265327**, and other property
further described in "Attachment A1", which is attached
hereto and fully incorporated herein.

**2. A blue and white, 16 GB Lexar Micro SD
electronic storage device**, and other property further
described in "Attachment A2", which is attached hereto
and fully incorporated herein.

Case Number:  |

To:   **Jason Bauwens, U.S. Postal Inspector**   and any Authorized Officer of the United States.

Affidavit(s) having been made before me by   **Jason Bauwens, U.S. Postal Inspector**   who has reason to
                                                          Affiant
believe that ☐ on the person of, or ☒ on the premises known as (name, description and/or location)
**See Attachments A1 & A2, attached hereto and fully incorporated herein**

in the _____ Eastern _____ District of _____ California _____ there is now concealed
a certain person or property, namely  (describe the person or property)

**See Attachments B1 and B2, attached hereto and fully incorporated herein**

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so
described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED TO SEARCH ON OR BEFORE   _December 5, 2014_
                                                                                  Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making
the search ☒ in the daytime -- 6:00 A.M. to 10:00 P.M. ☐ at anytime in the day or night as I find reasonable cause has been
established and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person
or property taken and prepare a written inventory of the person or property seized and promptly return this warrant to
**HONORABLE KENDALL J. NEWMAN** or other U.S. Magistrate Judge (Rule 41(f)(f4)), as required by law.

_Nov. 21 2014_   _3:55 p.c._   at   **Sacramento, California**
Date and Time Issued                                        City and State

**HONORABLE KENDALL J. NEWMAN,**
**United States Magistrate Judge**
Name and Title of Judge                                  Signature of Judge

| RETURN | Case Number: | |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

**CERTIFICATION**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

---
Signature of Affiant

Subscribed, sworn to, and returned before me this date.

---
Signature of Judge

---
Date

ATTACHMENT A1

A black and blue iPhone 5, cellular telephone, bearing exterior Model #A1532, bearing exterior IMEI# 013892000265327, and including an AT&T SIM card found inside of the phone. At the time the phone was seized, it was assigned Mobile Cellular Phone Number 209-688-3134, which was provided service by AT&T Wireless.

The cellular telephone is currently in the possession of the U.S. Postal Inspection Service office, located at 3131 Arch Airport Road, Stockton, California, in the Eastern District of California.

ATTACHMENT B1

The following evidence to be searched for constitute evidence, fruits, contraband, and instrumentalities of violations of: (i) Title 18, United States Code, Section 1028A (Aggravated Identity Theft); (ii) Title 18, United States Code, Section 1029 (Access Device Fraud); (iii) Title 18, United States Code, Section 1341 (Mail Fraud); (iv) Title 18, United States Code, Section 1344 (Bank Fraud); and (v) Title 18, United States Code, Section 1349 (Conspiracy) (collectively, the "Specified Federal Offenses"):

1.     Communications, records, or data including but not limited to emails, text messages, photographs, audio files, video files, or location data:

    a.  tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

    b.  tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

    c.  tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

    d.  tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

    e.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

    f.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

    g.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

    h.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

i.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

j.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

k.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

l.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

m.   tending to identify travel to or presence at locations involved in efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

n.   tending to identify travel to or presence at locations involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

o.   tending to identify travel to or presence at locations involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

p.   tending to identify travel to or presence at locations involved in efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

q.   tending to identify the user of, or persons with control over or access to, the subject phone as described in Attachment A1; or

r.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data described above.

## ATTACHMENT A2

A blue and white, 16 GB Lexar Micro SD electronic storage device, commonly referred to as a thumb drive.  The thumb drive has a small metal key ring attached to it at the non-port end of the device.

The thumb drive is currently in the possession of the U.S. Postal Inspection Service office, located at 3131 Arch Airport Road, Stockton, California, in the Eastern District of California.

ATTACHMENT B2

The following evidence to be searched for constitute evidence, fruits, contraband, and instrumentalities of violations of: (i) Title 18 United States Code, Section 1028A (Aggravated Identity Theft); (ii) Title 18 United States Code, Section 1029 (Access Device Fraud); (iii) Title 18 United States Code, Section 1341 (Mail Fraud); (iv) Title 18 United States Code, Section 1344 (Bank Fraud); and (v) Title 18 United States Code, Section 1349 (Conspiracy) (collectively, the "Specified Federal Offenses"):

1.      Documents, records, data, and information, including but not limited to financial records, receipts, statements of accounts, credit card applications, documents and effects bearing a form of identification such as a person's name, birthdate, address, Social Security number, driver's license number, or other personal identification information:

      a. tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

      b. tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

      c. tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

      d. tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

      e. tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

      f. tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

      g. tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

h.  tending to identify co-conspirators, criminal associates, or others involved in efforts to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

i.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently manufacture, modify, alter, use, or attempt to fraudulently manufacture, modify, alter, or use, credit cards or other access devices;

j.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices issued by or associated with federally insured financial institutions;

k.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently obtain, modify, alter, use, or attempt to fraudulently obtain, modify, alter, or use credit cards or other access devices resulting in the shipment of items by U.S. or private mail carrier;

l.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, or phone numbers–that may contain electronic evidence tending to indicate efforts to fraudulently collect, maintain, use, or attempt to fraudulently collect, maintain, or use personal identification information of victims in furtherance of violations of the Specified Federal Offenses;

m.  tending to identify the user of, or persons with control over or access to, the thumb drive as described in Attachment A2; or

n.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of the documents, records, data, and information described above.